IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| **KRYSTAL KAY EASLEY** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 6:22cv285 |
| | § | |
| **COMMISSIONER, SOCIAL** | § | |
| **SECURITY ADMINISTRATION** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff initiated this lawsuit by filing a complaint seeking judicial review of the Commissioner's decision denying an application for Social Security benefits. The matter was referred to the undersigned for findings of fact, conclusions of law and recommendations for the disposition of the matter pursuant to 28 U.S.C. § 636(b)(1). Having fully reviewed and considered Plaintiff's brief, the Commissioner's response, and Plaintiff's reply, the undersigned recommends that the Commissioner's final decision be **AFFIRMED** and that the above-styled lawsuit be **DISMISSED WITH PREJUDICE**.

**PROCEDURAL HISTORY**

Plaintiff filed an application for disability insurance benefits and an application for supplemental security income on October 10, 2019, alleging a disability onset date of April 30, 2018. The applications were denied initially and again on reconsideration. Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted a hearing on October 8, 2020 and issued an unfavorable decision on September 27, 2021. Plaintiff submitted a request for review of the ALJ's decision. The Appeals Council denied the request on March 10,

2022. As a result, the ALJ's decision became that of the Commissioner. Plaintiff then filed this lawsuit seeking judicial review of the Commissioner's decision.

## STANDARD

Title II of the Act provides for federal disability insurance benefits. Title XVI of the Act provides for supplemental security income for the disabled. The relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See Davis v. Heckler*, 759 F.2d 432, 435 n. 1 (5th Cir. 1983); *Rivers v. Schweiker*, 684 F.2d 1144, 1146, n. 2 (5th Cir. 1982); *Strickland v. Harris*, 615 F.2d 1103, 1105 (5th Cir. 1980).

Judicial review of the denial of disability benefits under section 205(g) of the Act, 42 U.S.C. § 405(g), is limited to "determining whether the decision is supported by substantial evidence in the record and whether the proper legal standards were used in evaluating the evidence." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)); *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (*per curiam*). A finding of no substantial evidence is appropriate only where there is a conspicuous absence of credible choices or no contrary medical evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (citing *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Accordingly, the Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 435 (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)); *see Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993); *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985). Rather, conflicts in the evidence are for the Commissioner to decide. *Spellman*, 1 F.3d at 360 (citing

*Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)); *Anthony*, 954 F.2d at 295 (citing *Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983)). A decision on the ultimate issue of whether a claimant is disabled, as defined in the Act, rests with the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000); Social Security Ruling ("SSR") 96-5p.

"Substantial evidence is more than a scintilla but less than a preponderance—that is, enough that a reasonable mind would judge it sufficient to support the decision." *Pena v. Astrue*, 271 Fed. Appx. 382, 383 (5th Cir. 2003) (citing *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). Substantial evidence includes four factors: (1) objective medical facts or clinical findings; (2) diagnoses of examining physicians; (3) subjective evidence of pain and disability; and (4) the plaintiff's age, education, and work history. *Fraga v. Bowen*, 810 F.2d 1296, 1302 n. 4 (5th Cir. 1987). If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). However, the Court must do more than "rubber stamp" the Administrative Law Judge's decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook*, 750 F.2d at 393 (5th Cir. 1985). The Court may remand for additional evidence if substantial evidence is lacking or "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994).

A claimant for disability has the burden of proving a disability. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which can be expected to last for a continuous period of not less

3

than 12 months." 42 U.S.C. §§ 416(i)(1)(A) and 423(d)(1)(A).  A "physical or mental impairment" is an anatomical, physiological, or psychological abnormality which is demonstrable by acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

To determine whether a claimant is disabled, the Commissioner must utilize a five–step sequential process.  *Villa*, 895 F.2d 1022.  A finding of "disabled" or "not disabled" at any step of the sequential process ends the inquiry.  *Id*.; see *Bowling*, 36 F.3d at 435 (citing *Harrell*, 862 F.2d at 475).  Under the five–step sequential analysis, the Commissioner must determine at Step One whether the claimant is currently engaged in substantial gainful activity.  At Step Two, the Commissioner must determine whether one or more of the claimant's impairments are severe.  At Step Three, the commissioner must determine whether the claimant has an impairment or combination of impairments that meet or equal one of the listings in Appendix I.  Prior to moving to Step Four, the Commissioner must determine the claimant's Residual Functional Capacity ("RFC"), or the most that the claimant can do given his impairments, both severe and non–severe.  Then, at Step Four, the Commissioner must determine whether the claimant is capable of performing his past relevant work.  Finally, at Step Five, the Commissioner must determine whether the claimant can perform other work available in the local or national economy.  20 C.F.R. §§ 404.1520(b)–(f).  An affirmative answer at Step One or a negative answer at Steps Two, Four, or Five results in a finding of "not disabled."  *See Villa*, 895 F.2d at 1022.  An affirmative answer at Step Three creates a presumption of disability.  *Id*.  To obtain Title II disability benefits, a plaintiff must show that he was disabled on or before the last day of his insured status.  *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert denied*, 455 U.S. 912, 102 S.Ct. 1263, 71 L.Ed.2d 452 (1982).  The burden of proof is on the claimant for the first four steps, but shifts to

the Commissioner at Step Five if the claimant shows that he cannot perform his past relevant work.

*Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989) (*per curiam*).

## ALJ'S FINDINGS

The ALJ made the following findings in the September 27, 2021 decision:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2020.

2. The claimant has not engaged in substantial gainful activity since April 30, 2018, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: irritable bowel syndrome, fibromyalgia, degenerative disc disease (DDD) of the cervical spine, Hashimoto's disease, migraines and pituitary adenoma (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday; can push and/or pull within the weight limits for lifting and carrying; can occasionally climb ramps and stairs; cannot climb ladders, ropes or scaffolds; can occasionally balance, stoop, kneel, crouch and crawl and must avoid concentrated exposure to hazards including unprotected heights and dangerous machinery.

6. The claimant is capable of performing past relevant work as a court clerk (DOT 243.362-010, SVP 6, sedentary). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7. The claimant has not been under a disability, as defined in the Social Security Act, at from April 30, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

# ADMINISTRATIVE RECORD

*Administrative Hearing*

Plaintiff testified at her hearing before the ALJ on October 8, 2020. Plaintiff testified that she lives with her parents. She stated that she is unable to work due to a combination of pain and lack of energy. Plaintiff explained that she started having flu-like symptoms in 2016. She could not get out of bed or lift her head. Plaintiff stated that she was eventually diagnosed with Hashimoto's disease. In addition, Plaintiff testified that she has neck pain, low back pain and bone pain.

Plaintiff testified that she was not seeing healthcare providers on a regular basis due to a lack of insurance, but she was taking medication for Hashimoto's, fever blisters, and migraines. Plaintiff estimated that she experiences migraine headaches at least two to three times per month, sometimes for four days at a time. Plaintiff stated that her medications cause her to lose focus. Plaintiff testified that she can only sit for five minutes at a time, stand for five to ten minutes, walk approximately half of a mile and lift up to twenty pounds. She cannot stoop, kneel or crawl due to back and joint pain. On a good day, Plaintiff stated that she can cook a quick meal. She is able to load the dishwasher and do her own laundry.

Plaintiff estimated that she has two or three bad days every week. She stated that she can only take one Advil or Tylenol at a time because they make her feel drowsy. Plaintiff testified that she does not sleep through the night and does not wake up feeling refreshed. She has mild sleep apnea but she is unable to use a CPAP machine due to problems using the mask. Plaintiff additionally testified that she experiences bouts of constipation and then diarrhea approximately two or three times per month that cause her to spend excessive amounts of time in the bathroom.

Plaintiff testified that her fibromyalgia pain started in 2012. In addition to exhaustion, she stated that she has pain in her joints and nerve pain.

A vocational expert witness, Phunda Yarbrough, also testified at the hearing. Ms. Yarbrough identified the following jobs for Plaintiff's past work: (1) receptionist, DOT 237.367-038, SVP 4, sedentary; and (2) court clerk, DOT 243.362-010, SVP 6, sedentary. The ALJ presented Ms. Yarbrough with a hypothetical individual of Plaintiff's age, education and work history, limited to light work, meaning the ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, and sit, stand, or walk for 6 hours in an 8-hour workday. Ms. Yarbrough testified that the hypothetical individual could perform Plaintiff's past work, both as a receptionist and a court clerk, as generally performed in the national economy. In addition, Ms. Yarbrough identified the following additional jobs that would be available to the hypothetical individual: (1) fingerprint clerk I, DOT 209.367-026, SVP 2, light, with approximately 264,210 jobs in the national economy; (2) furniture rental clerk, DOT 295.357-018, SVP 2, light, with approximately 95,560 jobs in the national economy; and (3) merchandise marker, DOT 209.587-034, SVP 2, light, with approximately 265,200 jobs in the national economy.

Next, the ALJ presented Ms. Yarbrough a hypothetical individual with the same parameters, except adding that the individual is limited to occasional climbing of ramps and stairs, no climbing ladders, ropes, or scaffolds, and occasional balancing, stooping, kneeling, crouching, and crawling. Ms. Yarbrough testified that the hypothetical individual could perform Plaintiff's past work, as well as the three other light jobs previously identified. If the hypothetical individual is reduced to sedentary work, meaning she can lift and/or carry a maximum of 10 pounds, sit for 6 hours, and stand and/or walk for 2 hours in an 8-hour workday, limited to occasional climbing of ramps and stairs, no climbing ladders, ropes, or scaffolds, and occasional balancing, stooping,

kneeling, crouching, and crawling, Ms. Yarbrough stated that the individual could perform Plaintiff's past work. In addition, she identified the following additional sedentary jobs that would be available: (1) document preparer, DOT 249.587-018, SVP 2, sedentary, with approximately 21,540 jobs in the national economy; (2) addresser, DOT 209.587-010, SVP 2, sedentary with approximately 20,180 jobs in the national economy; and (3) selection clerk, DOT 205.367-030, SVP 2, sedentary, with approximately 14,730 jobs in the national economy.

Ms. Yarbrough testified that an individual consistently missing work two days per month could not maintain competitive employment. She estimated that most employers only allow four to six days per year of sick time. In addition, an individual off task 15 to 20% more than the regularly provided rest breaks could not maintain competitive employment.

*Medical Record*

Plaintiff had a follow up appointment with Dr. Umair Sohail on June 8, 2017 for IBS with diarrhea. Plaintiff reported continued intermittent diarrhea and constipation. Dr. Sohail offered to treat Plaintiff empirically for small bowel bacteria, but Plaintiff refused medication.

An abdominal CT on February 2, 2019 showed evidence of colitis. Another abdominal CT on April 11, 2019 showed a right upper pole renal cyst with stone within the cyst as before with slightly larger non-obstructing right lower pole calyceal stone and small left lower pole calyceal stones, with no acute process.

Dr. Lester Collins treated Plaintiff for head and neck pain, radiating down into the mid to lower back, and migraines. Dr. Collins examined Plaintiff on June 27, 2019 and documented a normal neurologic examination, symmetric and normal deep tendon reflexes in the upper and lower extremities, normal muscle tone in the upper and lower extremities, and good strength in arms and legs. Dr. Collins noted histrionic Romberg's sign that is distractible. Plaintiff had severe

multifocal tenderness on both sides of her head and severe diffuse scalp allodynia, but no globe tenderness. Plaintiff's T range of motion in her neck was full and painless. A July 8, 2019 head CT showed no evidence of acute process. An MRI of the brain on July 26, 2019 was unremarkable with no acute process. An MRI of the C-spinal canal showed minimally bulging discs at C5-C6 and C6-C7 and a small radial tear at C5-C6 with no evidence of significant impingement. On August 5, 2019, Dr. Collins prescribed Decadron. Plaintiff had another MRI of the brain on September 19, 2019, with and without contrast, that showed anterior pituitary adenoma which is hypointense with delayed enhancement to almost isointense. The remainder of the brain was unremarkable without acute process or change.

Plaintiff returned to Dr. Collins on December 19, 2019. Dr. Collins noted marked tenderness of the scalp, neck and various soft tissue areas of the arms and legs. Plaintiff had weakness of the left abductor pollicis brevis muscle but giveaway weakness of the right due to pain. Plaintiff walked well and vibratory sensation was preserved at the toes. Pinprick sensation was decreased over the right thumb and forefinger and over the left thumb. Dr. Collins diagnosed migraine headaches responsive to sumatriptan, fibromyalgia responsive to corticosteroids and inhaled tetrahydrocannabinol, Hashimoto's thyroiditis, irritable bowel syndrome and colitis.

Dr. Luis Destarac saw Plaintiff on January 7, 2020 for allergies. Chest X-Ray showed normal appearing lungs and Plaintiff was negative to allergy skin prick testing for inhalants. Skin prick testing for foods revealed positive reactions to pecan, orange, tragacanth, Karaya, and avocado. Dr. Destarac recommended avoiding those foods, as they may be aggravating her irritable bowel syndrome.

Plaintiff was referred to Dr. Oksana Hamidi for pituitary adenoma. Plaintiff had a telehealth visit on April 9, 2020. Based on prior notes, Dr. Hamidi concluded that the pituitary

lesion appears small and does not seem to be compressing any surrounding structures, such that it is unlikely to be causing her symptoms of chronic pain, fatigue, and diffuse anthralgia. Dr. Hamidi noted primary hypothyroidism being treated with Armour thyroid.

Plaintiff went to the emergency room with right-sided pelvic pain and associated urinary retention on May 12, 2020. A CT showed obstructive kidney stones. She was treated with hydrocodone and released. Plaintiff returned to the emergency room with kidney pain unresponsive to hydrocodone on May 18, 2020. She was admitted and treated with ureteroscopy with stone removal and stent placement. The stent was removed on May 22, 2020 without difficulty.

Dr. Terri Lynn Eckert examined Plaintiff on June 4, 2021 to assess her for migraines. Dr. Eckert refilled medications, ordered labs and provided referrals to ophthalmology and ENT Associates of East Texas. An MRI of the C-spine ordered by Dr. Eckert showed minimal cervical spondylosis without significant central canal or neural foraminal stenosis.

Dr. Frank Reuter performed a consultative examination on July 1, 2021. On examination, Plaintiff could pick up a paper clip with either hand, lower extremities showed good reflexes, strength was good, straight leg raising was unremarkable, Plaintiff walked without difficulty, she could stand on either foot and squat, and she could bend to 90 degrees. Plaintiff exhibited fair cervical spine pain range of motion with no evidence of radiculopathy. Plaintiff had symptoms of joint and muscle pain, but no inflammation or deformity. No neurological impairment was noted and there was no evidence of endocrine dysfunction. Dr. Reuter opined that Plaintiff can frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, sit for 2 hours at a time for a total of 8 hours, stand for one hour at a time for a total of 4 hours, and walk for a total of 2 hours in an 8-hour workday. Dr. Reuter additionally concluded that Plaintiff can

frequently lift, reach, handle, finger, feel and push/pull on the left and right, frequently operate foot controls on the left and right, occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, and never climb ladders or scaffolds. Due to balance issues, Dr. Reuter determined that Plaintiff should never be exposed to unprotected heights and only occasionally be exposed to other environmental elements.

State agency medical consultants reviewed the record and formulated opinions concerning Plaintiff's ability to perform work-related functions. On January 16, 2020, Dr. Dennis Pacl opined that Plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours in an 8-hour workday, sit for 6 hours in an 8-hour workday, and push/pull within the limits for lifting and carrying. On reconsideration, Dr. Betty Santiago agreed with Dr. Pacl's assessment.

## DISCUSSION AND ANALYSIS

In her brief, Plaintiff asserts one issue for review—whether the Commissioner's decision to deny disability insurance benefits and Supplemental Security Income is supported by substantial evidence. More specifically, Plaintiff asserts that the ALJ identified Hashimoto's disease, irritable bowel syndrome and migraines as severe impairments but did not discuss the impact of the related symptoms on her ability to sustain work activity. Plaintiff complains that the ALJ did not adequately address her need for additional restroom breaks or the work absences that result from her migraines when assessing her residual functional capacity ("RFC").

In response, the Commissioner asserts that Plaintiff is improperly asking the Court to re-weigh the evidence to provide a different result. The Commissioner argues that the ALJ considered the effects of all of Plaintiff's impairments when assessing her RFC and concluding that she could perform a limited range of sedentary work. The Commissioner submits that the medical record

does not support Plaintiff's subjective assertion that she spends excessive amounts of time in the restroom due to her IBS symptoms. In addition, the medical record shows unremarkable brain imaging. The Commissioner submits that Plaintiff refused occipital nerve blocks, reported a lack of relief from prescribed medications, preferring to obtain relief with marijuana, and later reported migraine relief on Decadron. The Commissioner argues that the objective findings do not support the extent of limitations alleged by Plaintiff and Plaintiff's physicians recommended conservative treatment, including over-the-counter medications. The Commissioner notes that the ALJ fully considered Plaintiff's testimony and assessed greater limitations than the consultative examiner or the State agency medical consultants.

In her reply, Plaintiff asserts that the record shows that she reported daily headaches to her physicians, increasing migraines, and abdominal symptoms including diarrhea, constipation, bloating and distention. Plaintiff argues that the ALJ ignored the effects of her impairments, even though they were identified as severe impairments.

The ALJ included irritable bowel syndrome, Hashimoto's disease, and migraines in Plaintiff's list of severe impairments. As explained by the Court in *Stone v. Heckler*,[1] "an impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." A claimant must show more than a severe impairment to receive benefits. "Satisfying the *Stone* test of severity means only that claimant has passed the second step of the inquiry mandated by the regulations." *Shipley v. Secretary of Health and Human Services*, 812 F.2d 934, 935 (5th Cir. 1987). "A claimant is not entitled to Social Security disability benefits merely upon a showing that (s)he has a severe

---

[1] *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).

disability. Rather, the disability must make it so that the claimant cannot work to entitle the claimant to disability benefits." *Gutierrez v. Barnhart*, 2005 WL 1994289, at *9 (5th Cir. 2005). The consideration of whether an impairment is severe at step two is altogether different than the RFC inquiry at step four. *Id.*; see also *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir. 2001). As such, Plaintiff has not shown error simply because the ALJ's RFC does not incorporate specific limitations for every identified severe impairment.

It is the ALJ's responsibility to determine a claimant's residual functional capacity. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). That finding, however, must be supported by substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Newton v. Apfel*, 209 F.3d at 452. An ALJ is not required to include limitations that are not supported by the record. On review, the Court will scrutinize the record to determine whether substantial evidence is present to support the ALJ's finding, but the Court cannot reweigh the evidence or substitute its judgment. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). "If the Commissioner's fact findings are supported by substantial evidence, they are conclusive." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Richardson v. Perales*, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971)).

In the RFC assessment section of the ALJ's decision, the ALJ summarized Plaintiff's subjective statements and all of the objective medical evidence in the record. The ALJ's recitation includes records concerning Plaintiff's treatment for irritable bowel syndrome with symptoms of intermittent diarrhea, constipation, nausea, abdominal bloating and distention. The ALJ identified treatment notes with physical examination findings of no abdominal tenderness or ascites and Plaintiff's statement that she did not want medication. The ALJ additionally noted imaging showing colitis. Concerning migraines, the ALJ summarized Plaintiff's reports of headaches and

13

migraines associated with vomiting, dizziness, and photophobia, as well as Plaintiff's reports of relief with marijuana and Decadron and her refusal of occipital nerve blocks. The ALJ pointed to the most recent imaging showing minimal cervical spondylosis without significant central canal or neural foraminal stenosis and no definitive underlying pituitary mass.

Next, the ALJ turned to consideration of medical opinions and prior administrative medical findings. The ALJ considered Dr. Reuter's opinion and determined it was not persuasive "as the doctor's finding showing decreased range of motion of the cervical and lumbar spines support greater exertional limitations."[2] Further, the ALJ noted that Dr. Reuter's opinion was "inconsistent with recent treatment notes showing persistent migraine headaches, decreased energy and fatigue."[3] Similarly, the ALJ concluded that the State agency medical consultant opinions that Plaintiff can perform a full range of light work are not persuasive "as the medical evidence showing treatment for migraine headaches, diffuse pain and pituitary adenoma support greater exertional limitations and additional postural and environmental limitations."[4] She additionally noted that these opinions are inconsistent with Dr. Reuter's examination observations and findings.[5]

Considering all of the objective medical evidence in the record, the ALJ determined that it does not support the severity of functional limitations alleged by Plaintiff. Notably, imaging showed no acute process in the abdomen, no definitive underlying pituitary mass and only minimal cervical spondylosis. The ALJ noted that Plaintiff received routine and conservative treatment for her severe impairments, without a need for surgical intervention or other invasive treatment. In addition, the ALJ considered Plaintiff's statements concerning her daily activities, showing that she is able to care for herself, cook, clean, wash laundry, drive, shop, pay bills, and handle her

---

[2] See Administrative Record, ECF 13-2, at *29 (Bates stamp p. 28).
[3] *Id*.
[4] *Id*.
[5] *Id*.

finances. Further, physical examination findings showed normal heart and lung function, negative straight leg raises, a normal gait without assistive devices, a full range of motion in all extremities, normal muscle strength, normal reflexes and no motor or sensory deficits. The ALJ concluded that Plaintiff's asserted limitations are not consistent with these findings.

For all of these reasons, the ALJ's RFC finding is supported by substantial evidence. The ALJ's decision reveals that she sufficiently considered Plaintiff's symptoms, the objective medical record and opinion evidence. She cited specific evidence to support her opinions. Contrary to Plaintiff's assertions, the ALJ expressly considered her symptoms associated with migraines and IBS, as well as her symptoms of pain, fatigue and lack of energy. Plaintiff has not shown that the ALJ failed to apply the correct legal standards or that the RFC assessment is not supported by the record. The Commissioner's decision should be affirmed and the complaint should be dismissed.

## RECOMMENDATION

It is hereby **RECOMMENDED** that the Commissioner's final decision be **AFFIRMED** and that this social security action be **DISMISSED WITH PREJUDICE**.

Within fourteen days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir.1996) (en banc), *superseded by statute on*

*other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 10th day of October, 2023.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE